# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    **v.**                                 **Case No. 09-CR-172**

**RHETT MANKE**
        **Defendant.**

---

## SENTENCING MEMORANDUM

Defendant Rhett Manke pleaded guilty plea to possessing child pornography, contrary to 18 U.S.C. § 2252(a)(4), and I ordered a pre-sentence report ("PSR") and set the case for sentencing. In imposing sentence, the district court must first calculate and consider the advisory sentencing guideline range, including any requests for a departure from that range, then select an appropriate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., Gall v. United States, 552 U.S. 38, 49-50 (2007); Rita v. United States, 551 U.S. 338, 351 (2007); United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008). This memorandum sets forth the bases for my sentencing decisions in this case.

## I.  GUIDELINE CALCULATION

The PSR recommended a base offense level of 18 under U.S.S.G. § 2G2.2(a)(1), with enhancements of 2 levels because the offense involved depictions of a prepubescent minor or a minor who had not attained the age of twelve years, § 2G2.2(b)(2), 4 levels because the offense involved material containing depictions of violence, § 2G2.2(b)(4), 2 levels for use of a computer, § 2G2.2(b)(6), and 5 levels based on the number of images defendant possessed, § 2G2.2(b)(7)(D), for an adjusted level of 31. Based on his timely plea of guilty and expression

of remorse, the PSR recommended a 3 level reduction for acceptance of responsibility, § 3E1.1, for a final level of 28.  Based on his lack of any prior record, the report set a criminal history category of I, producing an imprisonment range of 78-97 months.  Neither side objected to these calculations, which I found correct and adopted accordingly.

The government moved for a guideline departure under U.S.S.G. § 5K1.1 in order to reward defendant for his substantial assistance in the prosecution of others.  In ruling on such a motion, the district court considers:

> (1) . . . the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>
> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
> (3) the nature and extent of the defendant's assistance;
>
> (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
>
> (5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a).  The court should give substantial weight to the government's evaluation of the extent of the defendant's assistance, U.S.S.G. § 5K1.1 cmt. n.3, but the extent of the departure is a matter within the court's discretion.  In attempting to quantify such a departure, I typically use the method suggested by the Seventh Circuit of granting something on the order of a 2-level adjustment for each factor found to be fully present, with a lesser reduction for those factors partially present.  E.g., United States v. Seib, 555 F. Supp. 2d 981, 985 (E.D. Wis. 2008); United States v. Matthews, 463 F. Supp. 2d 916, 918 (E.D. Wis. 2006).

In the present case, upon being approached by authorities regarding his possession of child pornography, defendant agreed to cooperate.  He released use of his computer screen

2

names to investigators and provided information on other users of file sharing programs, including their screen names, identifying characteristics, type of preferred materials, and language and terms used. He went over lists and described the type of child pornography he received from others. This permitted a detective to assume defendant's screen identity in an effort to identify other members of the file sharing sites defendant frequented. The investigation continued for an extended period of time, leading to one arrest and other potential cases. The person arrested was charged with possession of child pornography in this district and agreed to plead guilty. Based on defendant's assistance in the prosecution and expected conviction of this other individual, the government requested a reduction to 52 months, or about 4 levels.

Based on this assistance, I awarded 2 levels under the first § 5K1.1 factor, as defendant's information was significant and useful in obtaining an indictment and expected conviction for possession of child pornography. It appeared possible that more leads could be developed. Under the second factor, I awarded 2 levels based on the government's representation that defendant's information proved truthful and reliable. I also awarded 2 levels under the third factor, as the assistance amounted to more than just debriefing; defendant provided information and screen names that allowed pro-active work, i.e. the detective's assumption of his identity. I awarded no reduction under the fourth and fifth factors, as there was no evidence of danger or risk, or particular timeliness. Therefore, I granted a total reduction of 6 levels, making the guideline range 41-51 months.

3

## II.  SECTION 3553(a)

**A.**     **Sentencing Factors**

In imposing the ultimate sentence, the district court must consider:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the advisory guideline range;

(5)     any pertinent policy statements issued by the Sentencing Commission;

(6)     the need to avoid unwarranted sentence disparities; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute requires the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation of the defendant.  In making this determination, the district court may not presume that the guideline sentence is the correct one, Nelson v. United States, 129 S. Ct. 890, 892 (2009); Rita v. United States, 551 U.S. 338, 351 2465 (2007), or place "any thumb on the scale" favoring a guideline sentence, United

4

States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007). The court is also free, in evaluating the guidelines' recommendation, to consider whether when it adopted the particular guideline the Sentencing Commission fulfilled its "characteristic institutional role." Kimbrough v. United States, 552 U.S. 85, 109 (2007). Ultimately, the district court must make an independent determination, taking into account the types of sentences available, the other relevant § 3553(a) factors, and the arguments of the parties. See Gall, 552 U.S. at 49-50.

## A.    Analysis

### 1.    The Offense

The Milwaukee Cyber Crimes Task Force, through another investigation, received information that defendant possessed child pornography. On March 11, 2007, officers went to defendant's residence and, as discussed above, defendant agreed to cooperate in the investigation, admitting that he visited child pornography web sites and downloaded images, which he saved on his hard drive. He also admitted obtaining child pornography from Limewire, a file sharing program.

Agents seized defendant's computers, and a forensic review revealed a significant number of images constituting child pornography, more than 1200, although many appeared to be the same with small differences due to the cropping or presentation of the images. The PSR in ¶ 12 described the nature of the images, a few of which depicted sexual contact between girls and adult males. The National Center for Missing and Exploited Children identified several of the children, and the mother of one provided a statement, which was set forth in ¶¶ 14-18 of the PSR.

Defendant indicated that he began viewing adult pornography, but he eventually became

5

inured to those images and began viewing images of younger children. He stated that he began corresponding with others, who offered him more images, and that he tended to download groups of photos at a time, sometimes in large groups, from other file-share participants. Often, he received the same photo several times. He indicated that the vast majority of the images he possessed were posed, sexually explicit or nude pictures of girls between ages ten and fourteen but conceded that a small number depicted sexual conduct between children and adults. Most of the images were downloaded in a two month period between January and March 2007, after he obtained high speed internet access.

### 2.     The Defendant

Defendant was thirty-five years old, with no prior criminal record. He graduated high school, took some college courses, and compiled a solid work record. He had worked for the past four years as a trust specialist in a financial processing center, receiving good work evaluations, which actually improved after this offense came to light. He also worked a part-time night job.

I received several letters from friends attesting to defendant's helpful nature. He lived with his retired father, providing emotional support after the death of his mother. His family remained supportive, as did his friends, even after he disclosed the nature of his crime. None expressed concern for their own children.

Defendant's family members reported that defendant suffered from long-standing self-esteem issues, trouble with peers in school, a lack of emotional connections, and social isolation. Unfortunately, he received no mental health treatment until after this offense came to light.

However, defendant promptly sought treatment with Roger Northway, a specialist in the

6

area of sex offenses, after his March 2007 detection. In June 2007, Northway referred defendant to Dr. Michael Kotkin, who offered group therapy to child pornography offenders. Dr. Kotkin, who has treated sex offenders for nearly thirty years, produced a report and testified at the sentencing hearing regarding defendant's progress and prognosis. He indicated that while defendant was initially quiet in treatment, he later became active in the group, both in terms of reporting his own past and present experiences and in being responsive and helpful to other group members. He consistently completed homework assignments. In 2009, at defendant's own suggestion, he started attending monthly one-to-one sessions with Dr. Kotkin to supplement twice monthly group therapy sessions. Dr. Kotkin reported that defendant decided to no longer indulge in looking at adult pornography, as well, which reflected a more serious effort to address his habit. Dr. Kotkin identified several contributing factors in defendant's involvement with pornography, including extreme shyness around age-appropriate females; a lack of confidence in many areas, including sexuality; and very little dating experience, issues they addressed in counseling. Dr. Kotkin concluded that defendant presented a low risk of re-offending, with little inclination to inappropriate contact with children. Dr. Kotkin further stated that defendant demonstrated serious motivation to address his problems, remained a good candidate for out-patient therapy, and given the significant gains made could be maintained and supported in the community with continued counseling and community supervision.

Defendant also saw Dr. Norman Goldfarb on four occasions in April and May 2009 for psychological evaluation and testing. In his report, Dr. Goldfarb opined that defendant's interest in child pornography was secondary to other issues, mainly his discomfort in social situations and inability to develop and maintain normal relationships, rather than a primary

7

sexual preference. Dr. Goldfarb diagnosed defendant with social phobia and pedophilia, non-exclusive type (provisional) on Axis I, and avoidant personality disorder on Axis II. He stated that defendant's interest in child pornography may be regarded as secondary to his deficiency in social skills. Defendant became involved in a cycle of seeking out pornography as a means of satisfying sexual needs that he could not in his life. He continually broadened the material he searched for, as he became bored with what he had, as is frequently seen in individuals addicted to internet pornography. Dr. Goldfarb recommended continued sex offender treatment to assist defendant in understanding his cycle and placing behavioral controls on himself, and developing empathy skills for victims; individual psychotherapy to improve self-concept and social skills; and group therapy, particularly a men's support group. Dr. Goldfarb concluded that defendant did not pose a threat to the community, and that community supervision would provide the necessary amount of structure to keep him from re-offending and to underline the severity of the offenses. It would also allow him to maintain his job and a productive role in the community, which would be useful in terms of his self-esteem. Dr. Goldfarb believed that all treatment was readily available in the community. At the sentencing hearing, Dr. Kotkin testified that he agreed with Dr. Goldfarb's conclusions, indicating that defendant was not primarily sexually interested in children but rather adult females. However, he had little experience with such relationships, an issue he needed to address.

### 3. The Guidelines and Purposes of Sentencing

The guidelines recommended 41-51 months' imprisonment in this case, after the § 5K1.1 departure. However, the initial range in this case was based on U.S.S.G. § 2G2.2, a guideline which I and other judges across the country have recognized is seriously flawed and accordingly entitled to little respect. See, e.g., United States v. Raby, No. 2:05-cr-00003, 2009

8

WL 5173964, at *6 (S.D. W. Va. Dec. 30, 2009); United States v. Burns, No. 07 CR 556, 2009 WL 3617448, at *7 (N.D. Ill. Oct. 27, 2009); United States v. McElheney, 630 F. Supp. 2d 886, 892 (E.D. Tenn. 2009); United States v. Phinney, 599 F. Supp. 2d 1037, 1040 (E.D. Wis. 2009) (citing United States v. Grober, 595 F. Supp. 2d 382 (D.N.J. 2008); United States v. Stern, 590 F. Supp. 2d 945 (N.D. Ohio 2008); United States v. Doktor, No. 6:08-cr-46, 2008 WL 5334121 (M.D. Fla. Dec. 19, 2008); United States v. Johnson, 588 F. Supp. 2d 997 (S.D. Iowa 2008); United States v. Noxon, No. 07-40152, 2008 WL 4758583 (D. Kan. Oct. 28, 2008); United States v. Ontiveros, No. 07-CR-333, 2008 WL 2937539 (E.D. Wis. July 24, 2008) (Griesbach, J.); United States v. Hanson, 561 F. Supp. 2d 1004 (E.D. Wis. 2008); United States v. Shipley, 560 F. Supp. 2d 739 (S.D. Iowa 2008); United States v. Baird, 580 F. Supp. 2d 889 (D. Neb. 2008)).  I have not in this decision repeated all of the criticisms of the guideline contained in the decisions cited above.

The Commission prepared a report on the history of this guideline in October 2009, U.S. Sentencing Commission, The History of the Child Pornography Guidelines (Oct. 2009), but nothing in that report refuted these criticisms.   Rather, it reinforced them.[1]

In the report, the Commission admitted that "Congress has repeatedly expressed its will regarding appropriate penalties for child pornography offenders." Id. at 6.  The report shows that while the Commission made an effort to study of the issue, Congress consistently intervened and at times frustrated the Commission's attempt to create a logical approach to these cases.

---

[1]Based on the widespread dissatisfaction reflected in the cases cited in the text, the Commission established review of this guideline as a policy priority for the amendment cycle ending May 1, 2010.

9

In adopting the original 1987 guidelines for production, U.S.S.G. § 2G2.1, and transport, distribution and receipt, U.S.S.G. § 2G2.2, the Commission studied existing sentencing practices. Id. at 10. In 1990, following a review of the guidelines and related convictions, a Staff Report identified the failure of the guidelines to account for past or present abuse of children, obviously a legitimate concern. Id. at 13-14. However, other changes made at that time responded to the Commission's perception of congressional intent and increased statutory penalties. Id, at 14. The Commission received opposition to increased penalties from the Judicial Conference's Committee on Criminal Law and the ABA, as well as individual judges, who "generally indicated the view that § 2G2.2 offenses involving individuals with no significant criminal history or future likelihood of acting out should receive straight probationary periods." Id. at 16.

In 1991, after Congress made simple possession a crime, the Commission again attempted to study the issue, ordering preparation of a Staff Report, which made recommendations for appropriate guidelines for such offenses. Based on the Report and research, the Commission initially established a separate guideline for possession and receipt offenses, U.S.S.G. § 2G2.4, with a base offense level of 10 and 2 level enhancement for material involving pre-pubescent minors or minors under age twelve. Id. at 19. However, based on a mis-characterization of what the Commission had done, Congress promptly directed the Commission to raise offense levels for all child pornography offenses and to return the receipt offense to U.S.S.G. § 2G2.2. Id. at 19-22. As is relevant here, Congress directed the Commission to increase the base level for possession to not less than 13 and to provide for at least a 2 level increase for possessing 10 or more items. Id. at 24.

As the October 2009 Report acknowledges, subsequent increases came from

10

congressional directives rather than Commission study. In 1995, Congress directed the Commission to increase base offense levels by at least 2 and to provide for an increase of at least 2 levels for use of a computer. Id. at 26-27. In October 1998, Congress again directed the Commission to revisit these guidelines. Id. at 32. In 2003, Congress directly amended the guidelines, for the first and only time to date, specifically adding the number of images table in essentially its current form. Id. at 38-39. The Commission thereafter made additional changes in response to the 2003 Act, including consolidating §§ 2G2.2 and 2G2.4. The Commission did study some issues during this period of time, including the pattern of abuse issue, id. at 37, and the impact of the 2004 changes, id. at 42, but as the 2009 Report makes clear, the increased guideline ranges are primarily a product of Congress, not the Commission.

In Phinney, I set forth in detail the history of this guideline as it applied to offenders like this one, those convicted of simple possession. 599 F. Supp. 2d at 1041-43. Several of the particularly flawed guideline enhancements that I discussed in Phinney and Hanson were applicable in this case. In particular, defendant received enhancements for use of a computer, material involving children under twelve years of age, and number of images, factors present in almost every case.[2]

First, as to use of the computer, aside from being present in nearly every case, as the Commission explained in a previous report the enhancement does not make a great deal of

---

[2]As the Commission discussed in the October 2009 Report, it elected to deal with Congress's adoption of mandatory minimums and increased statutory maxima by setting the base level below the mandatory minimum and relying on specific offense characteristics applicable in most cases to reach the statutory mandatory minimum. Id. at 44-46. This may have been a sensible way of dealing with the issue, but it cannot be considered the product of Commission research and study; rather, it was a method of dealing with changes adopted by Congress.

11

sense because on-line pornography generally comes from the same pool of images found in specialty magazines or adult bookstores. Further, to the extent that use of a computer may aggravate an offense, it does not do so in every case. For example, someone who receives or trades images with others on-line is not as culpable as someone who sets up a website to distribute child pornography to a large number of subscribers. If the defendant did not use the computer to widely disseminate the images, use them to entice a child, or show them to a child, the purpose of the enhancement is not really served. See Hanson, 561 F. Supp. 2d at 1009-10 (discussing a 1996 Sentencing Commission report).

Second, defendant received the full 5-level enhancement for more than 600 images, despite the fact that, as a result of internet swapping, defendants readily obtain that number of images with minimal effort. In this case, defendant acquired most of the images in a two month period after he obtained high speed internet; he obtained large numbers of photos from single down-loads; and some of the images were, aside from minor differences, essentially duplicative. It appeared that he viewed some of the images just once, the same date as the download, and not again. Given these facts, to the extent that number of images may serve as a proxy for harm, the guideline range here overstated that harm. As Judge Goodwin explained in Raby, while the prosecution of consumers may constitute a means of lowering demand for child pornography, this market-based justification does not support the number-of-images enhancement in § 2G2.2(b)(7). The worldwide market for child pornography is so vast that the relative market impact of 600 additional images is minuscule, yet it results in a huge increase in the guidelines, in this case raising the low end from 46 to 78 months, before the § 5K1.1 departure. See Raby, 2009 WL 5173964, at *7.

Finally, defendant received a 4-level enhancement for depictions of sadistic conduct or

12

violence, which need not involve "violence" per se, but simply consist of a prepubescent minor engaged in a sex act. Here, the number of images depicting such conduct was quite small compared to the overall nature of defendant's collection. There was also no evidence that defendant specifically sought out such images; it appeared that his primary interest was in less destructive material. As I noted in Hanson, to the extent that harsh punishment is necessary to reduce the demand for material that results in the greatest harm to children, a defendant who does not seek out the worst should not receive the same sentence as someone who does. See Hanson, 561 F. Supp. 2d at 1009.

Based on the Commission's initial approach, which was based on study, defendant's range would have been 6-12 months. The actual range was much higher because of changes instigated by Congress, which did not exemplify the Commission's exercise of its characteristic institutional role. In Phinney, a case somewhat similar to this one, I imposed a sentence consistent with the original range: 6 months prison followed by 10 years of supervised release. In the present case, based on his cooperation, long-term progress in treatment, and the other factors discussed in this decision and at the sentencing hearing, I found it appropriate to impose a sentence served primarily in the community. Such a sentence was, under all the circumstances, sufficient to satisfy the purposes of sentencing.

Defendant's crime was very serious in that it contributed to a market that causes real harm to the children involved. But defendant demonstrated genuine insight into this reality in his statements, in addition to cooperating with the government in the prosecution of others who contributed to the market. Further, as discussed in evaluating the guidelines' recommendation, this case contained some mitigating aspects. In particular, defendant's interests tended toward the less destructive material the court sees in these types of cases, and arose out of other

13

social and mental problems he addressed in treatment. Given these circumstances, a period of community confinement sufficed to provide just punishment.

I saw no need for prison to protect the public in this case. The record contained no evidence that defendant had committed or likely would commit a contact offense with a child. He made progress in treatment over nearly three years, as discussed, which further reduced the likelihood that he would return to the viewing of this sort of material or otherwise re-offending. Drs. Kotkin and Goldfarb both found him to present a low risk of re-offending. I found a lengthy period of supervision sufficient to deter him from doing so. I imposed special conditions designed to satisfy these purposes of sentencing. I also noted in this regard defendant's lack of any other prior record.

Finally, I found that a sentence served in the community best satisfied the need to address defendant's correctional treatment needs, for the reasons stated by Dr. Goldfarb. Unlike many offenders, this defendant appeared before the court with a 2 ½ year track record in treatment, which demonstrated that his needs could be met in the community. This sentence also allowed defendant to maintain his jobs, which seemed in both his and society's best interests. Sentences served primarily in the community, although varying significantly from the guidelines, can be appropriate in these types of cases depending on the particular circumstances. See, e.g., United States v. Autery, 555 F.3d 864 (9th Cir. 2009); United States v. Rowan, 530 F.3d 379 (5th Cir. 2008); United States v. Meiller, 650 F. Supp. 2d 887 (D. Minn. 2009).

By statute, probationary terms may not exceed 5 years. 18 U.S.C. § 3561. I found a longer period of supervision necessary in this case. Supervised release following prison may, in these types of cases, extended for life. 18 U.S.C. § 3583(k). Given these circumstances,

14

I impose a sentence of 1 day imprisonment, followed by 12 years of supervised release with a condition of 6 months community confinement. I found this sufficient but not greater than necessary. Because the sentence was supported by the particular facts of the case, defendant's cooperation, and the Commission's original approach to child pornography cases, it created no unwarranted disparity.

### III. CONCLUSION

For these reasons and those set forth on the record, I committed defendant to the custody of the Bureau of Prisons for 1 day, followed by 12 years of supervised release. I found this term sufficient to ensure monitoring and treatment. Any further problems would surely come to light during this time. As an initial condition, I ordered defendant to serve 6 months in a community correctional center on the first available vacancy with work release privileges.

I further restricted defendant's computer usage, ordering that he not possess or use a computer at any location, including employment, without prior notice to the supervising probation officer, and that he provide the probation officer with all of his computer pseudonyms, passwords and logons, and consent to the probation officer conducting periodic unannounced examinations of his computer equipment, which could include removal of such equipment, when necessary, for the purpose of conducting a more thorough examination. I forbid him from possessing or using any data encryption or data erasure technique or program, and required that he consent to third-party disclosure to any employer or prospective employer of any computer restrictions imposed upon him. I also forbid him from possessing any sexually explicit material, entering any establishment were such material can be obtained or viewed, or using any electronic equipment, including a computer, to obtain or view such material. In order to further monitor his activities, I required him to provide access to all financial information

15

requested by the supervising probation officer, including but not limited to copies of phone/internet provider bills, credit card statements and receipts.

I further ordered defendant to participate in a program of mental health assessment and treatment, which may include sex offender treatment. I required that he waive all rights to confidentiality regarding mental health treatment in order to allow release of information to the supervising probation officer and to authorize open communication between the probation officer and the treatment provider.

Finally, I ordered defendant to perform ten hours of community service work per year, in lieu of a fine. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 19th day of January, 2010.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge